**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

| | |
|---|---|
| CALIFORNIA PUBLIC UTILITIES COMMISSION, *Petitioner*, | No. 16-70481 |
| CALIFORNIA DEPARTMENT OF WATER RESOURCES STATE WATER PROJECT; SACRAMENTO MUNICIPAL UTILITY DISTRICT; TRANSMISSION AGENCY OF NORTHERN CALIFORNIA, *Petitioners-Intervenors*, | OPINION |
| v. | |
| FEDERAL ENERGY REGULATORY COMMISSION, *Respondent*, | |
| PACIFIC GAS & ELECTRIC COMPANY, *Respondent-Intervenor.* | |

On Petition for Review of an Order of the
Federal Energy Regulatory Commission

Argued and Submitted October 13, 2017
San Francisco, California

Filed January 8, 2018

Before: Sidney R. Thomas, Chief Judge, and Stephen
   Reinhardt and Stephen S. Trott, Circuit Judges.

Opinion by Chief Judge Thomas

## SUMMARY[*]

### Federal Energy Regulatory Commission

The panel granted the California Public Utilities
Commission's ("CPUC") petition for review and held that the
Federal Energy Regulatory Commission ("FERC") arbitrarily
and capriciously determined that Pacific Gas & Electric was
eligible for an incentive adder for remaining a member of the
California Independent System Operator Corporation when
state law prevented PG&E's departure without authorization.

Section 219(c) of the Federal Power Act required FERC
to provide incentives to induce utilities to join regional
transmission organizations. Accordingly, FERC adopted
Order 679 which established upward adjustments, or
"incentive adders," to the rate of return on equity of utilities
that participate in transmission organizations. In 1998, the
CPUC approved PG&E's transfer of operational control of
certain transmission assets to a newly-created California
Independent System Operator Corporation.

The panel held that FERC did not reasonably interpret
Order 679 as justifying summary grants of adders for

---

[*] This summary constitutes no part of the opinion of the court. It has
been prepared by court staff for the convenience of the reader.

remaining in a transmission organization. The panel also held that FERC's interpretation was neither entitled to *Auer v. Robbins*, 519 U.S. 452 (1997), deference nor persuasive in its own right. The panel further held that because its interpretation was unreasonable, FERC's grants of adders to PG&E were an unexplained departure from longstanding policy, which provided that incentives should only be awarded to induce future voluntary behavior. In addition, the panel held that FERC created a generic adder in violation of Order 679's requirement of case-by-case review of adders.

The panel held that the CPUC's petition was not an impermissible collateral attack on Order 679.

**COUNSEL**

Traci L. Bone (argued), Harvey Y. Morris, and Arocles Aguilar, San Francisco, California, as and for Petitioner.

Harvey L. Reiter (argued), Stinson Leonard Street LLP, Washington, D.C.; Michael R. Postar, Duncan Weinberg Genzer & Pembroke, Washington, D.C.; Katharine M. Mapes, Spiegel & McDiarmid LLP, Washington, D.C.; for Petitioners-Intervenors.

Mark Patrizio (argued), San Francisco, California, for Respondent-Intervenor.

Anand Viswanathan (argued), Attorney; Robert H. Solomon, Solicitor; Max Minzner, General Counsel; Washington, D.C.; as and for Respondent.

**OPINION**

THOMAS, Chief Circuit Judge:

In this petition for review, we consider whether the Federal Energy Regulatory Commission ("FERC" or "Commission") arbitrarily and capriciously determined that Pacific Gas & Electric Company ("PG&E") was eligible for an incentive adder for remaining a member of the California Independent System Operator Corporation ("Cal-ISO") when state law prevented PG&E's departure without authorization. We conclude that it did, and we grant the petition.

I

Section 201 of the Federal Power Act ("FPA") gives FERC jurisdiction over the rates, terms, and conditions of service for the transmission and sale at wholesale of electric energy in interstate commerce. 16 U.S.C. §§ 824(a)-(b). Section 219 of the FPA, added in 2005, directed FERC to promulgate a rule providing incentive-based rates for electric transmission for the purpose of benefitting consumers through increased reliability and lower costs of power. 16 U.S.C. § 824s(a). As relevant here, section 219(c) required FERC to provide incentives to induce utilities to join regional transmission organizations. 16 U.S.C. § 824s(c). FERC did so in 2006 through the adoption of Order 679 and the rehearing orders that followed. *Promoting Transmission Investment Through Pricing Reform*, Order No. 679, 116 FERC ¶ 61,057 ("Order 679"), *order on reh'g*, Order No. 679-A, 117 FERC ¶ 61,345 (2006) ("Order 679-A"), *order on reh'g*, Order No. 679-B, 119 FERC ¶ 61,062 (2007) ("Order 679-B").

Order 679 established upward adjustments, or "incentive adders," to the rate of return on equity of utilities that participate in transmission organizations. Order 679 set forth the terms on which FERC would grant the incentive adders. FERC determined that it would "not grant outright any incentives," but that it would grant such incentives "when justified" in the context of individual declaratory orders or section 205 filings.[1]  Order 679 at PP 1, 326.  FERC would evaluate adder requests on a "case-by-case basis."  *Id*. at P 326.

Order 679 provided that adders would be available for utilities that "have already joined, and that remain members of," transmission organizations in "recognition of the benefits that flow from membership" and the fact that "continuing membership is generally voluntary."  Order 679 at P 331. The order stated that a utility "will be presumed to be eligible for the incentive" if it can demonstrate that it has joined a transmission organization and that its membership is ongoing. *Id*. at P 327.

FERC declined to create a "generic adder" for membership in a transmission organization.  Order 679 at P 326.  Commenters had urged FERC to make a "generic finding" that any entity that joins a transmission organization "automatically qualif[ies]" for an incentive adder, with at least one commenter specifically proposing a 50 basis-point incentive adder.  *Id*. at P 318.  FERC declined to adopt this

---

[1] "Section 205" refers to FPA § 205, *codified at* 16 U.S.C. § 824d. Investor-owned utilities like PG&E make transmission owner rate case filings with FERC pursuant to section 205 in order to recover their costs of transmission service.

proposal, electing to consider "on a case-by-case basis" what incentive (if any) is appropriate for a utility. *Id*. at P 326.

In 1995, as part of its restructuring of California's electric power industry, the California Public Utilities Commission ("CPUC") ordered the state's three largest investor-owned utilities, including PG&E, to submit to FERC a proposal to establish an independent system operator ("ISO") and to transfer operational control of their facilities to that ISO.[2] *Order Instituting Rulemaking on Commission's Proposed Policies Governing Restructuring California's Electric Service Industry and Reforming Regulation*, 64 CPUC 2d 1, p. 95, 1995 WL 792086 at *99 (Dec. 20, 1995) ("CPUC Decision 95-12-063"). In the same decision, CPUC retained authority under California state law to review any transfer of control of transmission facilities to the ISO. CPUC Decision 95-12-063, p. 31, 1995 WL 792086 at *15 (citing Cal. Pub. Util. Code § 851). CPUC's determinations were largely affirmed in state law. *See* Cal. Pub. Util. Code §§ 330, 365.

In 1997, California's three largest investor-owned utilities, including PG&E, sought CPUC authorization to turn over operational control of certain transmission assets to the newly-created Cal-ISO. CPUC approved this transfer of control. In its decision approving the transfer, CPUC stated that any further transfers of control, such as transfers of control from the Cal-ISO back to the utilities, would also require CPUC authorization under state law. *Joint Application of Pac. Gas & Elec. Co., San Diego Gas & Elec. Co., and S. Cal. Edison Co.*, 78 CPUC 2d 307, p. 313, 1998

---

[2] An ISO is a form of regional transmission organization, and an ISO's members are eligible for incentive adders under section 219(c) and Order 679.

WL 242747 at *7 (Jan. 21, 1998) (citing Cal. Pub. Util. Code § 851).

Since it joined the Cal-ISO in 1997, PG&E has submitted an annual "transmission owner" tariff filing to FERC pursuant to section 205 of the FPA. *See Pac. Gas. & Elec. Co.*, 148 FERC ¶ 61,245 at P 1 n.2 (2014). Each filing establishes PG&E's transmission revenue requirement, which includes the rate of return to which it is entitled as a participating transmission owner. *Id*. Since 2007, PG&E has regularly invoked Order 679 in its tariff filings to request 50 basis-point incentive adders for its ongoing participation in the Cal-ISO, and FERC has summarily granted those requests.[3] Various parties, including CPUC, protested PG&E's earlier requests, but those cases settled without final resolution of the objections raised.

In 2014 and 2015, PG&E filed its sixteenth and seventeenth transmission owner tariff filings, respectively ("TO 16" and "TO 17"). In each of those filings, PG&E requested a 50 basis-point incentive adder. CPUC filed timely protests to both of the filings. CPUC's protests claimed that because PG&E's continued participation in the Cal-ISO is mandated by CPUC order, granting it incentive adders would reward PG&E for doing something it was already required to do.

---

[3] *See Pac. Gas & Elec. Co.*, 120 FERC ¶ 61,296 at P 15 (2007); *Pac. Gas & Elec. Co.*, 124 FERC ¶ 61,305 at P 20 (2008); *Pac. Gas & Elec. Co.* 128 FERC ¶ 61,288 at P 19 (2009); *Pac. Gas & Elec. Co.*, 132 FERC ¶ 61,272 at P 23 (2010); *Pac. Gas & Elec. Co.*, 141 FERC ¶ 61,168 at P 25 (2012); *Pac. Gas & Elec. Co.*, 144 FERC ¶ 61,227 at P 20 (2013); *Pac. Gas & Elec. Co.*, 148 FERC ¶ 61,245 at P 30 (2014); *Pac. Gas & Elec. Co.*, 152 FERC ¶ 61,252 at P 23 (2015).

FERC issued orders in both proceedings summarily granting PG&E's requested adders. *Pac. Gas & Elec. Co.*, 148 FERC ¶ 61,245 at P 30 (2014) ("TO 16 Initial Order"); *Pac. Gas & Elec. Co.*, 152 FERC ¶ 61,252 at P 23 (2015) ("TO 17 Initial Order"). The TO 16 Initial Order responded to CPUC's arguments by stating:

> "[C]onsistent with previous Commissions [sic] orders, we summarily accept PG&E's request for a 50 basis point incentive ROE adder for its continued participation in [Cal-ISO] . . . Parties opposing PG&E's request . . . have presented no new evidence or circumstances to warrant reexamining whether the adder is appropriate in this proceeding."

TO 16 Initial Order at P 30 (footnotes omitted). The TO 17 Initial Order held similarly:

> "[C]onsistent with previous Commission orders, we accept PG&E's request for a 50 basis point incentive ROE adder for its continued participation in [Cal-ISO] . . . PG&E is a member of [Cal-ISO] . . . and its membership is ongoing; therefore, PG&E is presumed to be eligible for this incentive adder in accordance with Order No. 679."

TO 17 Initial Order at P 23 (footnotes omitted). FERC rejected CPUC's argument that the incentive adder was not justified because it did not "induce" PG&E's continuing membership in the Cal-ISO: "Notwithstanding CPUC's argument asserting that PG&E's participation is not voluntary

because it is mandated by state law, it is within the Commission's authority to grant incentive adders as described in Order No. 679." *Id*. at P 24. FERC also rejected CPUC's argument that it had created a generic adder, stating that PG&E had demonstrated that it was a Cal-ISO member and "thus satisfied the criteria set forth in Order No. 679." *Id*. at P 25.

CPUC sought rehearing of both FERC orders. CPUC explained that FERC erred by granting PG&E an incentive adder even though it was not free to leave the Cal-ISO; failing to respond to CPUC's arguments about PG&E's involuntary membership in the Cal-ISO; and granting a generic adder inconsistent with Order 679. FERC denied CPUC's rehearing requests. *Pac. Gas & Elec. Co.*, 154 FERC ¶ 61,119 at P 10 (2016) ("TO 16 Reh'g Order"); *Pac. Gas & Elec. Co.*, 154 FERC ¶ 61,118 at P 9 (2016) ("TO 17 Reh'g Order"). In response to CPUC's claims that PG&E was not free to leave the Cal-ISO, FERC stated that Order 679 "is clear that the Commission may grant incentive adders for public utilities that join and/or continue to remain in" transmission organizations and that the order does not "require that the Commission discontinue such adders in the face of arguments like those that CPUC has made here." TO 16 Reh'g Order at P 10; TO 17 Reh'g Order at P 9.

In response to CPUC's claims that FERC had adopted a generic adder, FERC stated that utilities with ongoing membership in transmission organizations are "presumed eligible" for the adder and that CPUC "concedes" that PG&E had an ongoing membership in the Cal-ISO. TO 16 Reh'g Order at P 11; TO 17 Reh'g Order at P 11. FERC added that because PG&E's membership in the Cal-ISO helps the Cal-ISO to "fulfill its duties," FERC found the incentive adders

"to be justified." TO 16 Reh'g Order at P 12; TO 17 Reh'g Order at P 10.

Finally, FERC asserted that CPUC's objection amounted to a "collateral attack" on Order 679 and Order 679-A that it did not need to address. TO 16 Reh'g Order at P 13; TO 17 Reh'g Order at P 12. CPUC timely petitioned for review.

II

FERC has jurisdiction over the two transmission owner rate filings (TO 16 and TO 17) that initiated the instant proceedings pursuant to section 205 of the FPA. *See* 16 U.S.C. § 824d. We have jurisdiction to review "order[s] issued by the Commission" under section 313(b) of the FPA. *See* 16 U.S.C. § 825*l*(b). All parties to this petition for review agree that the incentive adder issue was definitively resolved by FERC in the orders under review.

We review a decision by FERC to determine whether its action was "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706(2)*, see also Fall River Rural Elec. Coop., Inc. v. FERC*, 543 F.3d 519, 525 (9th Cir. 2008). "A court is not to ask whether a regulatory decision is the best one possible or even whether it is better than the alternatives." *FERC v. Elec. Power Supply Ass'n*, 136 S. Ct. 760, 782 (2016). Rather, the court must uphold a decision if the agency has "examined the relevant considerations and articulated a satisfactory explanation for its action, including a rational connection between the facts found and the choice made." *Id.* (quoting *Motor Vehicle Mfrs. Ass'n of United States, Inc. v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43 (1983)) (alterations normalized). Our review "is limited to . . . the administrative

record," *Envtl. Coal. of Ojai v. Brown*, 72 F.3d 1411, 1414 (9th Cir. 1995), and to those "grounds upon which . . . the record discloses that [the agency's] action was based." *SEC v. Chenery Corp.*, 318 U.S. 80, 87 (1943).

### III

FERC's determination that PG&E was entitled to incentive adders for remaining in the Cal-ISO was arbitrary and capricious. FERC did not reasonably interpret Order 679 as justifying summary grants of adders for remaining in a transmission organization. Because its interpretation was unreasonable, FERC's grants of adders to PG&E were an unexplained departure from longstanding policy. Moreover, FERC created a generic adder in violation of the order.

### A

FERC's interpretation of Order 679 as justifying summary grants of incentive adders to utilities that remain in transmission organizations was not reasonable.

Under *Auer v. Robbins*, 519 U.S. 452 (1997), we defer to an agency's interpretation of its own ambiguous regulation unless that interpretation is "plainly erroneous or inconsistent with the regulation, or there is reason to suspect that the interpretation does not reflect the agency's fair and considered judgment on the matter in question." *W. Radio Servs. Co. v. Qwest Corp.*, 678 F.3d 970, 984–85 (9th Cir. 2012) (internal citation omitted).

FERC interprets Order 679 as conferring on it "the authority. . . to continue to grant incentive adders for electric utilities . . . that remain members of regional transmission

organizations" without further inquiry into the voluntariness of their membership. Brief of Respondent at 20. FERC notes that Order 679 makes an entity presumptively eligible to receive an adder if it demonstrates continuing membership in a transmission organization. *See* Order 679 at P 327. FERC appears to interpret the "presumed to be eligible" language as absolving it of an obligation to consider whether the presumption should apply to utilities that are prohibited from withdrawing from transmission organizations without the consent of a higher authority. Under this interpretation, ongoing membership itself is the sole criterion for receipt of an incentive adder.

1

FERC's interpretation of Order 679 is plainly erroneous and inconsistent with the regulation. Order 679 provides that a utility demonstrating that it has remained in a transmission organization is "presumed to be eligible" for an incentive adder. Order 679 at P 327. However, language throughout Orders 679 and 679-A suggests that the presumption of eligibility may be rebutted by the arguments CPUC has made and that ongoing membership is not sufficient for an incentive adder.

The orders commit FERC to case-by-case review of incentive adders even for utilities that have demonstrated ongoing membership in transmission organizations. Order 679 states that FERC "will approve, *when justified*, requests for ROE-based incentives for public utilities that join and/or continue to be a member of" transmission organizations. Order 679 at P 326 (emphasis added). If all utilities that continued to be members of transmission organizations automatically qualified for incentive adders, the "when

justified" language would be surplusage. In the same paragraph, FERC declines proposals to "create a generic adder for such membership" and states that it will "consider specific incentives on a case-by-case basis." *Id*. If FERC's interpretation were correct, case-by-case review would be meaningless.

The justification for incentive adders as articulated in Order 679 also belies FERC interpretation of the order. The order states that the "basis for the incentive is a recognition of the benefits that flow from membership in [transmission] organizations *and the fact that continuing membership is generally voluntary*." Order 679 at P 331 (emphasis added). When membership is not voluntary, the incentive is presumably not justified. Challenges to the presumption of eligibility for the incentive on such grounds would not be precluded by the order and would need to be addressed by FERC if raised in tariff filing proceedings.

Order 679-A, citing section 219's purpose of ensuring reliability and reducing the cost of power, describes incentive adders as "an *inducement* for utilities to join, and remain in, Transmission Organizations." Order 679-A at P 86 (emphasis added). An incentive cannot "induce" behavior that is already legally mandated. Thus, the voluntariness of a utility's membership in a transmission organization is logically relevant to whether it is eligible for an adder. The same paragraph acknowledges that granting incentives only for joining transmission organizations "offers no inducement to stay in these organizations *for members with the option to withdraw*." *Id.* (emphasis added). Order 679-A thus distinguishes between utilities that have the option to withdraw from transmission organizations and those without

the option, and it necessarily implies that incentives are justified only for the former.

Finally, Order 679-A states that with respect to incentives under section 219, "[a] prior contractual commitment or statute may have a bearing on our nexus evaluation of individual applications." Order 679-A at P 122. This also necessarily implies that ongoing membership in a transmission organization is not dispositive as to incentive adder eligibility.

FERC argues that Orders 679 and 679-A considered and rejected the argument that the voluntariness of a utility's membership in a transmission organization should bear on its eligibility for an incentive adder. Order 679 did decline to adopt proposals making utilities ineligible for incentives if they were ordered to *join* transmission organizations by statute. Order 679 at P 316; Order 679-A at P 83. However, this does not support FERC's interpretation, which holds that utilities that remain in transmission organizations qualify for adders even when their *continued participation* is compelled by statute. No party to the Order 679 proceedings raised the issue of whether a utility could qualify for an incentive for its involuntary continued participation in a transmission organization.

The text of Orders 679 and 679-A makes it clear that FERC's interpretation of those orders is plainly erroneous and inconsistent with the regulations. The orders did not make ongoing membership in a transmission organization the sole criterion for an incentive adder, and the orders did not preclude challenges based on the voluntariness of a utility's membership in a transmission organization. We decline to defer to FERC's interpretation of the orders.

2

Even if not plainly erroneous, an agency's interpretation is not owed deference if "there is reason to suspect that the interpretation does not reflect the agency's fair and considered judgment on the matter in question." *W. Radio Servs. Co.*, 678 F.3d at 985. "Indicia of inadequate consideration include . . . signs that the agency's interpretation amounts to no more than a convenient litigating position; or an appearance that the agency's interpretation is no more than a *post hoc* rationalization advanced by an agency seeking to defend past agency action against attack." *Price v. Stevedoring Servs. of Am., Inc.*, 697 F.3d 820, 829–30 n.4 (9th Cir. 2012) (en banc) (internal quotation marks and citations omitted).

FERC's interpretation of Order 679 is a *post hoc* rationalization of its actions. FERC never before explicitly articulated the interpretation it relies on, even though, as the author of Order 679, it could have easily incorporated the interpretation into the order. Order 679 provides that utilities that demonstrate ongoing membership in transmission organizations will be "presumed to be eligible" for incentive adders, but it is silent as to whether that presumption can be rebutted for utilities that cannot voluntarily leave their organizations. Order 679 at P 327. Nowhere does Order 679 state that the voluntariness of a utility's membership is irrelevant to its eligibility for an incentive adder, even though this would have been a reasonably foreseeable challenge to future adders. By observing that transmission organization membership was "*generally* voluntary," FERC indicated that it knew that some utilities could not voluntarily leave. Order 679 at P 331 (emphasis added). FERC could have foreseen a challenge like CPUC's challenge here.

Nor did FERC clearly articulate its interpretation in the two orders currently on review. In denying CPUC's rehearing requests for the TO 16 and TO 17 orders, FERC merely stated that "it is within the Commission's authority to grant incentive adders as described in Order No. 679," that Order 679 "is clear that the Commission may grant incentive adders for public utilities that join and/or continue to remain in" transmission organizations, and that Order 679 does not "require that the Commission discontinue such adders in the face of arguments like those that the CPUC has made here." TO 16 Reh'g Order at P 10; TO 17 Reh'g Order at P 9. These statements do not reflect a fair and considered judgment on the meaning of Order 679.

It is apparent that FERC's interpretation of Order 679 is merely a convenient litigating position and a *post hoc* rationalization of the orders on review. We decline to defer to the interpretation.

3

"[W]hen *Auer* deference is not warranted, an agency's interpretation of an ambiguous regulation should be evaluated under the principle articulated in *Skidmore v. Swift & Co.*, 323 U.S. 134 (1944)." *Indep. Training & Apprenticeship Program v. Cal. Dep't of Indus. Relations*, 730 F.3d 1024, 1035 (9th Cir. 2013). Under this standard, this court gives an agency's interpretation "a measure of deference proportional to the thoroughness evident in its consideration, the validity of its reasoning, its consistency with earlier and later pronouncements, and all those factors which give it the power to persuade." *Id*. at 1036 (quoting *Christopher v. SmithKline Beecham Corp.*, 567 U.S. 142, 159 (2012)) (internal quotation marks omitted).

FERC's interpretation does not reflect thorough consideration, nor is it persuasive in its own right. FERC does not develop or justify its interpretation in either the orders on review or in its briefing before this court; the interpretation is found only in FERC's post-hoc reasoning.[4] We do not owe deference to such a "nominal" interpretation. *Barboza v. Cal. Ass'n of Prof'l Firefighters*, 799 F.3d 1257, 1267 (9th Cir. 2015). Moreover, as explained above, FERC's interpretation is inconsistent with the text of Order 679 and Order 679-A and the evident purposes of those regulations.

In light of our conclusion that FERC's interpretation is neither entitled to *Auer* deference nor persuasive in its own right, we employ traditional tools of interpretation to determine whether Order 679 permits challenges to the presumption of eligibility of the sort CPUC has lodged here. *Christopher v. SmithKline Beecham Corp.*, 567 U.S. at 161. The order's plain language and purpose show that it does. A utility that joins a regional transmission organization is "presumed to be eligible" for incentive adders under Order 679, but this presumption is rebuttable. Order 679 at P 327. Given the order's evident purpose of inducing utilities to voluntarily remain in transmission organizations, and given its language specifying that incentives will be awarded "when justified" and on a "case-by-case basis," it permits challenges to incentives on the grounds that they will not induce continuing participation in transmission organizations. *Id.* at

---

[4] In a proceeding subsequent to the orders on review here, FERC offered for the first time an explicit interpretation of the "presumption" provision in Order 679, in line with the implicit interpretation at issue here. *See Pac. Gas & Elec. Co.*, 160 FERC ¶ 61,090 at P 13 (Sept. 20, 2017). Because this interpretation was not advanced in the two orders on review here, it could not sustain those orders even if we were to consider it.

P 326. Challenges such as that mounted by CPUC are not precluded and must be answered by FERC.

B

Given that its interpretation of Order 679 is not controlling, FERC failed to provide a reasoned explanation for its actions in the orders under review. An agency must "articulate a satisfactory explanation for its action." *Motor Vehicle Mfrs. Ass'n*, 463 U.S. at 43. When an agency changes policy, the requirement that it provide a reasoned explanation for its action demands, at a minimum, that the agency "display awareness that it *is* changing position." *FCC v. Fox Television Stations, Inc.*, 556 U.S. 502, 515 (2009). "An agency may not, for example, depart from a prior policy *sub silentio* or simply disregard rules that are still on the books." *Id.*

FERC had a longstanding policy that incentives should only be awarded to induce future behavior. FERC departed from this policy without acknowledgment or explanation. This departure was arbitrary and capricious.

1

FERC has a longstanding policy that rate incentives must be prospective and that there must be a connection between the incentive and the conduct meant to be induced. This policy is incorporated in Order 679. The policy prohibits FERC from rewarding utilities for past conduct or for conduct which they are otherwise obligated to undertake.

This longstanding policy is evinced in a series of FERC decisions and statements. In 2001, FERC denied a committee

of utilities an incentive for a maintenance/construction pilot project. FERC reasoned that awarding the incentive would "unjustly reward" the committee "for doing what it is supposed to do, i.e., to adequately maintain its facilities in a prudent, cost-effective manner." *New England Power Pool*, 97 FERC ¶ 61,093 at 61,477 (2001), *order on reh'g*, 98 FERC ¶ 61,249 (2002). In a 2001 case, FERC found that retroactive incentives are ineffective, since the utilities that would receive the incentives "would have already made their decisions." *ISO New England*, 96 FERC ¶ 61,359 at 62,355 (2001), *aff'd Sithe New England Holdings, LLC v. FERC*, 308 F.3d 71, 78 (1st Cir. 2002). A 1992 FERC policy statement makes its position clear: "Consideration of past performance would violate the standard that incentive ratemaking must be prospective. . . . Incentive regulation can produce superior results over traditional regulation only if it is prospective." *Incentive Ratemaking for Interstate Nat. Gas Pipelines, Oil Pipelines, & Elec. Utilities*, 61 FERC ¶ 61,168 at 61,599 (1992). In 2006, prior to the adoption of Order 679, FERC denied Southern California Edision Company ("SCE") an incentive for joining the Cal-ISO because SCE was already a member. FERC stated that SCE "need[ed] no inducement" to join the Cal-ISO, because it was already a member. *S. Cal. Edison Co.*, 114 FERC ¶ 61,018 at P 15 (2006).

FERC argues that this longstanding policy predates, and is implicitly superseded by, Order 679. Order 679 did explicitly reverse the holding in *S. Cal. Edison*, in which FERC had denied SCE an incentive for joining the Cal-ISO because SCE was already a Cal-ISO member. In Order 679-A, FERC stated that its decision in *S. Cal. Edison* "failed to recognize that incentives are equally important in inducing utilities to join and remain in Transmission Organizations."

Order 679-A at P 86 n.142.  However, this statement did not overrule FERC's policy of awarding incentives to induce future voluntary conduct.  FERC overruled its policy barring incentives to utilities for remaining in transmission organizations, but it still treated such incentives as prospective: they were premised on the fact that membership in transmission organizations was "generally voluntary," and thus that utilities may need incentives to choose to remain in such organizations.  Order 679 at P 331.  FERC's policy of only providing incentives to induce future voluntary conduct was still in place as of the TO 16 and TO 17 orders.

2

Awarding PG&E incentive adders was a departure from FERC's longstanding policy that incentives should only be awarded to induce voluntary conduct.  This unacknowledged and unexplained departure from policy was arbitrary and capricious.

In the initial orders and on rehearing, FERC did not acknowledge its longstanding policy, nor did it provide an explanation for its departure from that policy.  It merely asserted that it had the authority to grant incentive adders to PG&E and that CPUC's voluntariness arguments were irrelevant to adder eligibility.  FERC's statements would only explain its actions if its interpretation of Order 679 were correct.  Because that interpretation is erroneous, the orders on review were a departure from Order 679's terms and the longstanding policy it incorporates.  Without any

acknowledgment or explanation of that departure, the orders were arbitrary and capricious.[5]

C

FERC also acted arbitrarily and capriciously by creating a generic adder in contravention of Order 679's requirement of case-by-case review of adders.

Order 679 provides that FERC will approve incentive adder requests "when justified" and will evaluate such requests "on a case-by-case basis." Order 679 at P 326. Order 679 explicitly rejected a proposal to adopt a generic 50-basis-point incentive adder for ongoing transmission organization membership. *Id*.

In its challenges to PG&E's tariff filings, CPUC argued that incentive adders could not induce PG&E to remain in the Cal-ISO since its membership was involuntary. FERC ignored this argument and "summarily accept[ed]" PG&E's

---

[5] FERC and PG&E each argue that PG&E's participation in the Cal-ISO is, in fact, voluntary. FERC argues that even if PG&E is not free to leave the Cal-ISO without CPUC's consent, "that still does not demonstrate that [PG&E] is forbidden from *seeking* to leave the [Cal-ISO]," and that PG&E "could take steps, with California's approval, to voluntarily leave the [Cal-ISO]." Brief of Respondent at 23–24. PG&E goes a step further and argues that its withdrawal from membership in the Cal-ISO is not subject to CPUC approval. Brief of PG&E as Respondent-Intervenor at 22–25. These arguments, even if correct, could not sustain the orders on review, as they do not appear anywhere in those orders. We can only uphold agency action on grounds articulated by the agency in its orders; we "may not accept appellate counsel's *post hoc* rationalizations for agency action." *Or. Nat. Desert Ass'n v. Bureau of Land Mgmt.*, 531 F.3d 1114, 1141 (9th Cir. 2008) (quoting *Motor Vehicle Mfrs. Ass'n*, 463 U.S. at 50).

adder request "consistent with previous Commission orders." TO 16 Initial Order at P 30; TO 17 Initial Order at P 23. It reiterated this position on rehearing. TO 16 Reh'g Order at P 11; TO 17 Reh'g Order at P 11. FERC also asserted that an adder is not "generic" simply because other utilities have received the same adder. TO 16 Reh'g Order at P 13 & n.26 (citing *Midcontinent Indep. Sys. Operator, Inc.*, 161 FERC ¶ 62,269 at P 14 (2015)); TO 17 Reh'g Order, at P 11 & n.22 (same).

When Order 679 is read in accordance with its plain language and evident purpose, it is clear that FERC has created a generic adder in violation of its provisions. To satisfy Order 679's case-by-case analysis requirement and to avoid creating a generic adder, FERC needed to inquire into PG&E's specific circumstances, i.e., whether it could unilaterally leave the Cal-ISO and thus whether an incentive adder could induce it to remain in the Cal-ISO. The fact that the other utilities have received the same adder does not make it generic; it is the fact that the adders were granted summarily without any case-specific inquiry into the circumstances of PG&E's membership that made them generic. FERC's summary grants are an unacknowledged and unexplained departure from Order 679. The orders on review are arbitrary and capricious. *Fox*, 556 U.S. at 515.

IV

CPUC's petition is not an impermissible collateral attack on Order 679. Under the FPA, this court's "jurisdiction . . . is limited to review of new orders," and the court does not have jurisdiction over a petition for review "that collaterally attacks a prior FERC order." *Pac. Gas & Elec. Co. v. FERC*, 464 F.3d 861, 868 (9th Cir. 2006). A petition for review

under the FPA is a collateral attack on a prior FERC order if the order upon which the petition is based is a "clarification," as opposed to a "modification," of the prior order. *Id.* To differentiate between a clarification and a modification, the court asks "whether a reasonable party in the petitioner's position would have perceived a very substantial risk that the original order meant what the Commission now says it meant." *Id.* at 868–69 (citation and alterations omitted).

For the same reasons that FERC's interpretation of Order 679 is inconsistent with the regulation, a reasonable party in CPUC's position would not have perceived a very substantial risk that FERC would interpret Order 679 as precluding its challenges. To the extent that FERC now interprets Order 679 as precluding such challenges, this interpretation constitutes a modification, and CPUC's challenge is not an impermissible collateral attack on the original order.

FERC makes two additional arguments in support of its collateral attack claim. First, FERC argues that CPUC's petition is a collateral attack on Order 679 because CPUC is advancing the same argument that FERC considered and rejected in 2006: that utilities legally mandated to join transmission organizations should not be eligible to receive incentive adders. However, this is not the challenge CPUC is making. CPUC challenges incentive adders for *remaining* in a transmission organization when a utility is not free to leave. No party to the Order 679 proceeding raised the issue of whether a utility could qualify for an incentive adder for continued participation in a transmission organization when such participation was not voluntary. CPUC was not precluded from making such a challenge to the orders on review.

Second, FERC argues that CPUC had sufficient notice that PG&E was eligible for an incentive adder because it has been a party to each of the annual proceedings since 2007 in which FERC approved PG&E's requests for incentive adders. This argument is also unpersuasive. CPUC settled the proceedings granting PG&E's first incentive adder in 2007, as well as every other proceeding that followed. Each one of those orders stated that FERC's approval of the settlement did not constitute precedent regarding any issue or principle raised in the proceeding. FERC cannot now cite these settlement approvals as putting CPUC on notice that it was precluded from challenging future incentive adders.

Neither Order 679 nor the settlement approval orders that followed gave CPUC sufficient notice that Order 679 precluded challenges to incentive adder eligibility on the ground that a utility's membership in a transmission organization is involuntary. CPUC's petition is thus not an impermissible collateral attack on Order 679.

V

We grant CPUC's petition for review and remand to FERC for further proceedings consistent with this opinion. We need not, and do not, reach any other issue urged by the parties.

**PETITION GRANTED.**