NOT FOR PUBLICATION

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

FILED

JUL 11 2025

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

| | |
|---|---|
| PACIFIC GAS & ELECTRIC COMPANY; SOUTHERN CALIFORNIA EDISON COMPANY; SAN DIEGO GAS & ELECTRIC COMPANY, Petitioners, v. FEDERAL ENERGY REGULATORY COMMISSION, Respondent, -------------------------------------- CALIFORNIA DEPARTMENT OF WATER RESOURCES STATE WATER PROJECT; CALIFORNIA PUBLIC UTILITIES COMMISSION; CITY OF ANAHEIM; CITY OF AZUSA; CITY OF BANNING; CITY OF COLTON; CITY OF PASADENA; CITY OF RIVERSIDE; NORTHERN CALIFORNIA POWER AGENCY, Intervenors. | No. 24-2527 Agency No. ER24-96-000 Federal Energy Regulatory Commission MEMORANDUM[*] |

---

[*] This disposition is not appropriate for publication and is not precedent except as provided by Ninth Circuit Rule 36-3.

| | |
|---|---|
| PACIFIC GAS & ELECTRIC COMPANY; SOUTHERN CALIFORNIA EDISON COMPANY; SAN DIEGO GAS & ELECTRIC COMPANY, | No. 24-3786<br><br>Agency No. ER24-96-002<br>Federal Energy Regulatory Commission |
| Petitioners, | |
| v. | |
| FEDERAL ENERGY REGULATORY COMMISSION, | |
| Respondent, | |
| -------------------------------------- | |
| CALIFORNIA PUBLIC UTILITIES COMMISSION; CITY OF ANAHEIM; CITY OF AZUSA; CITY OF BANNING; CITY OF COLTON; CITY OF PASADENA, | |
| Intervenors. | |

On Petition for Review of an Order of the
Federal Energy Regulatory Commission

Argued and submitted June 4, 2025
San Francisco, California

Before: CALLAHAN, BADE, and KOH, Circuit Judges.

Pacific Gas and Electric Company (PG&E), Southern California Edison

Company, and San Diego Gas and Electric Company (collectively, the Utilities)

petition for review of an order from the Federal Energy Regulatory Commission

(FERC) denying PG&E's request for rate incentives—known as an "adder"—

based on its membership in the California Independent System Operator Corporation (CAISO). We have jurisdiction under 16 U.S.C. § 825*l*(b), and we affirm.

"We review a decision by FERC to determine whether its action was 'arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law.'" *Cal. Pub. Utils. Comm'n v. FERC* (*CPUC I*), 879 F.3d 966, 973 (9th Cir. 2018) (quoting 5 U.S.C. § 706(2)). We "must uphold a decision if the agency has 'examined the relevant considerations and articulated a satisfactory explanation for its action, including a rational connection between the facts found and the choice made.'" *Id.* (quoting *FERC v. Elec. Power Supply Ass'n*, 577 U.S. 260, 292 (2016)).

1.      The Utilities challenge FERC's determination that California Public Utilities Code Section 362(c) renders their membership in CAISO "involuntary" such that they are no longer entitled to adder under Section 219(c) of the Federal Power Act (FPA), 16 U.S.C. § 824s(c), and *Promoting Transmission Investment Through Pricing Reform*, Order No. 679, 116 FERC ¶ 61,057 (2006) [hereinafter Order 679]. Order 679 provides that FERC "will approve, when justified, requests for [adder] for public utilities that join and/or continue to be a member of" a regional transmission organization (RTO) or independent system operator (ISO). Order 679 ¶ 326.

In its initial order denying PG&E's request for a Section 219(c) incentive, FERC found that PG&E's membership in CAISO is not voluntary because "PG&E is required to participate in CAISO and cannot unilaterally withdraw."  On rehearing, FERC determined that California law does not permit the Utilities to end their participation even "with [the] approval of" the California Public Utilities Commission (CPUC).  We review de novo FERC's interpretation of California law.  *Cal. Pub. Utils. Comm'n v. FERC* (*CPUC II*), 29 F.4th 454, 466 (9th Cir. 2022).  Because the California Supreme Court has not decided whether CPUC has the authority under state law to approve such a withdrawal, we must predict "how the California Supreme Court 'would decide the issue using intermediate appellate court decisions, decisions from other jurisdictions, statutes, treatises, and restatements as guidance.'"  *Id.* (quoting *Vestar Dev. II, LLC v. Gen. Dynamics Corp.*, 249 F.3d 958, 960 (9th Cir. 2001)).

FERC did not err by concluding that PG&E's participation in CAISO is involuntary for purposes of the Section 219(c) adder.  In *CPUC II*, we rejected CPUC's position that California Public Utilities Code Section 851 requires CPUC to approve a utility's withdrawal from CAISO, reasoning that "transfers of operational control" did not fall within the language of Section 851.[1]  *See id.* at

---

[1] As relevant here, Section 851 requires that a public utility obtain CPUC's approval to "sell, lease, assign, mortgage, or otherwise dispose of" its property. Cal. Pub. Utils. Code § 851(a).

466–67. Shortly after *CPUC II*, California enacted Assembly Bill 209, which amended California Public Utilities Code Section 362. *See* Assemb. Bill 209, Stats. 2022, Ch. 251 (Cal. 2021–2022 Reg. Session) [hereinafter AB 209]. AB 209's preamble rejects our conclusion in *CPUC II*. *See* AB 209 § 1(a) (clarifying that "[t]he transfer of control of an electrical corporation's property is generally prohibited without prior approval by [CPUC] pursuant to Section 851").

As amended, California Public Utilities Code Section 362(c) provides that, "[c]onsistent with Section 851 and [CPUC's] regulation of transfers of operational control of electrical corporation facilities," the Utilities "shall participate" in CAISO.[2] "'Shall' indicates mandatory action." *Fejes v. FAA*, 98 F.4th 1156, 1161 (9th Cir. 2024). In light of this mandate, at oral argument, CPUC disclaimed any authority to authorize the Utilities' complete withdrawal from CAISO, notwithstanding CPUC's authority to authorize the Utilities' withdrawal of certain facilities.

---

[2] It is undisputed that the Utilities are electrical corporations to which Section 362(c) applies. *See also Joint Application of Pac. Gas and Elec. Co. (U 39-E), San Diego Gas & Elec. Co. (U 902-E), and S. Cal. Edison Co. (U 388-E) for an Order under Pub. Utils. Code Section 853 Exempting Them from the Provisions of Section 851 or in the Alternative for Authority to Convey Operational Control of Designated Transmission Lines and Associated Facilities to an Independent System Operator*, 78 CPUC 2d 307, 1998 WL 242747 (Jan. 21, 1998).

And contrary to the Utilities' arguments, neither Section 362(d) nor Section 851 grant CPUC the authority to authorize the Utilities to violate this mandate, as both provisions address only transfers of operational control of specific facilities or property. *See* Cal. Pub. Util. Code § 362(d) ("An electrical corporation shall not withdraw a *facility* from the operational control of [CAISO] without [CPUC] approval pursuant to Section 851." (emphasis added)); Cal. Pub. Util. Code § 851(a) (providing that a public utility "shall not sell, lease, assign, mortgage, or otherwise dispose of, or encumber the whole or any part of its . . . *property* necessary or useful in the performance of its duties to the public" without obtaining CPUC's approval to do so (emphasis added)). Thus, the reference to Section 851 in Section 362(c) cannot grant CPUC the authority to allow the Utilities to cease their participation in CAISO. Because the Utilities cannot withdraw from CAISO, their participation is not voluntary. *See Voluntary*, Merriam-Webster, https://www.merriam-webster.com/dictionary/voluntary [https://perma.cc/R3SZ-JXE7] (defining voluntary as "unconstrained by interference" or "acting . . . of one's own free will without . . . legal obligation"); *Voluntary*, Black's Law Dictionary (12th ed. 2024) (defining voluntary as "[u]nconstrained by interference; not impelled by outside influence").

2.     The Utilities argue that if California Public Utilities Code Section 362(c) renders PG&E's participation in CAISO involuntary, it is preempted by

federal law. FERC declined to address preemption below.[3] On appeal, FERC argues that its decision to ignore the issue was reasonable but agrees that we may address it on appeal. *See also Ray v. Gonzales*, 439 F.3d 582, 591 (9th Cir. 2006) (noting that the court may address in the first instance purely legal questions over which the agency "claims no particular expertise").

Section 362(c) is not preempted by federal law. Impossibility preemption does not apply because, by remaining members of CAISO, the Utilities are complying with both federal and state law. *See* Cal. Pub. Utils. Code § 362(c) (requiring the Utilities to participate in CAISO); 16 U.S.C. §§ 824a(a) (directing FERC to facilitate "the voluntary interconnection and coordination of facilities for the generation, transmission, and sale of electric energy"), 824s(c) (directing FERC to provide rate incentives for RTO participation); *Crosby v. Nat'l Foreign Trade Council*, 530 U.S. 363, 372–73 (2000) ("We will find preemption where it is impossible for a private party to comply with both state and federal law . . . .").

Obstacle preemption does not apply because California's decision to require the Utilities to participate in CAISO does not frustrate the purpose of Section

---

[3] In its initial order denying Section 219(c) adder, FERC did not respond to PG&E's request for an opportunity to "fully brief" the issue of "pre-emption of state law requiring [CAISO] participation." In its rehearing order, FERC concluded that the proceeding was "an inappropriate vehicle to address preemption concerns." We therefore reject Intervenors' argument that PG&E failed to adequately raise preemption below.

219(c) of the FPA, which is to increase participation in RTOs using incentives. *See* 16 U.S.C. § 824s(c); Order 679 ¶ 331. That Congress chose to incentivize, rather than mandate, RTO membership does not necessarily imply an intent to prevent states from mandating it. *See also Chamber of Com. of U.S. v. Whiting*, 563 U.S. 582, 604, 607 (2011) (cautioning that obstacle preemption is a "high threshold" and that courts must avoid a "freewheeling judicial inquiry into whether a state statute is in tension with federal objectives," which "would undercut the principle that it is Congress rather than the courts that pre-empts state law" (quoting *Gade v. Nat'l Solid Wastes Mgmt. Ass'n*, 505 U.S. 88, 110–11 (1992) (Kennedy, J., concurring in part and concurring in judgment))).

As for field preemption, the FPA grants FERC jurisdiction over interstate wholesale rates but leaves regulation of intrastate wholesale markets and retail sales of electricity to the states. *See* 16 U.S.C. § 824; *Elec. Power Supply Ass'n*, 577 U.S. at 266–67; *see also Nw. Cent. Pipeline Corp. v. State Corp. Comm'n of Kan.*, 489 U.S. 493, 509 (1989) (explaining that field preemption exists when Congress legislates broadly enough "to occupy an entire field of regulation, leaving no room for the States to supplement federal law"). By requiring CAISO participation, California is regulating within the domain Congress assigned to the states, *see* 16 U.S.C. § 824(b)(1), but in a manner that indirectly affects interstate wholesale rates. Such indirect effects do not trigger field preemption. *Cf.* 16

U.S.C. § 824a-1(a) (allowing, but not requiring, FERC to exempt utilities from state laws that *hinder* voluntary utility cooperation).

3.      Finally, the Utilities argue that "the plain text of Section 219(c) [of the FPA] awards the adder to all utilities regardless of whether their participation is compelled by state law." Acknowledging that FERC has interpreted Section 219(c) as imposing a voluntariness requirement for adder, *see* Order 679 ¶¶ 326, 331, the Utilities argue that this interpretation conflicts with the plain text of the statute, which "makes clear that FERC lacks discretion to limit the adder only to voluntary members of an RTO."

In determining whether FERC has acted within its statutory authority by requiring voluntary RTO membership for Section 219(c) adder, we exercise our "independent judgment" based on the "best reading" of the statute. *Loper Bright Enters. v. Raimondo*, 603 U.S. 369, 399, 400, 412 (2024); *see also Murillo-Chavez v. Bondi*, 128 F.4th 1076, 1086 (9th Cir. 2025) (explaining that, after *Loper Bright*, agency interpretations have only the "power to persuade" (quoting *Loper Bright*, 603 U.S. at 388)).

Section 219(c) states that, "[i]n the rule issued under this section, [FERC] shall . . . provide for incentives to each transmitting utility or electric utility that joins [an RTO]." 16 U.S.C. § 824s(c). The single, best reading of Section 219(c) is that RTO adder requires voluntary membership. An "incentive" is "something

that incites or has a tendency to incite to determination or action." *Incentive*, Merriam-Webster, https://www.merriam-webster.com/dictionary/incentive [https://perma.cc/NCA3-UMNG]. "An incentive cannot 'induce' behavior that is already legally mandated." *CPUC I*, 879 F.3d at 974. Thus, the Utilities' interpretation of Section 219(c) reads the word "incentive" out of the statute.

Additionally, the other subsections of Section 219 suggest that Congress intended Section 219(c) adder to induce voluntary RTO participation, not to function as a payment or reward to RTO members. Section 219(a) directs FERC to create rate-based incentives to improve transmission for the benefit of consumers. *See* 16 U.S.C. § 824s(a). Section 219(b) identifies the promotion of capital investment and new technology as a target of the incentives, and Section 219(c) identifies RTO membership as another target. *See* 16 U.S.C. § 824s(b)–(c). Finally, Section 219(d) reaffirms FERC's duty to ensure that all rates adopted pursuant to Section 219 are "just and reasonable." 16 U.S.C. § 824s(d). Viewed as a whole, the "best" reading of Section 219 is that the statutory provision provides incentives for a variety of voluntary actions by utilities, with an overarching goal of benefiting consumers. Requiring a connection between a rate

incentive and the conduct meant to be induced is consistent with FERC's general duty to ensure that rates are "just and reasonable."[4] *See* 16 U.S.C. § 824s(d).

Accordingly, FERC did not act arbitrarily, capriciously, or contrary to law by denying PG&E's request for Section 219(c) adder because California Public Utilities Code Section 362(c) renders PG&E's membership in CAISO involuntary.

**AFFIRMED.**

---

[4] The Utilities also argue that the "incentive" in Section 219(c) "is intended to induce . . . increased 'capital investment in the enlargement, improvement, maintenance, and operation of all facilities for the transmission of electric energy in interstate commerce,'" and adder induces this investment by providing "utilities with a higher return on transmission investment." In other words, "the behavior Congress is seeking to induce is investment in transmission infrastructure," not membership in RTOs. This argument is unpersuasive because Section 219(b), not Section 219(c), concerns capital investment in transmission facilities, and Section 219(c) does not condition incentives on infrastructure investments. *See* 16 U.S.C. § 824s(b)–(c).