**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

In re: THE EXXON VALDEZ,

———————————————

SEA HAWK SEAFOODS, INC.,
            *Plaintiff-Appellant,*

            v.

EXXON CORPORATION and EXXON
SHIPPING COMPANY,
            *Defendants-Appellees,*

            and

UNITED STATES OF AMERICA,
            *Intervenor-Appellee.*

No. 05-35468

D.C. No.
CV-89-00095-HRH

OPINION

Appeal from the United States District Court
for the District of Alaska
H. Russel Holland, Chief District Judge, Presiding

Argued and Submitted
February 7, 2007—Seattle, Washington

Filed April 16, 2007

Before: Susan P. Graber, Richard A. Paez, and
Carlos T. Bea, Circuit Judges.

Opinion by Judge Graber

4305

**COUNSEL**

Michael T. Shein, Reed Longyear Malnati Ahrens & West, PLLC, Seattle, Washington; John G. Young, Young deNormandie, Seattle, Washington; and Kevin P. Sullivan, Sullivan & Thoreson, Seattle, Washington, for the plaintiff-appellant.

John F. Daum and Victor H. Jih, O'Melveny & Myers LLP, Los Angeles, California, for the defendants-appellees.

Eric Fleisig-Greene, U.S. Department of Justice, Washington, D.C., for the intervenor-appellee.

**OPINION**

GRABER, Circuit Judge:

Plaintiff Sea Hawk Seafoods, Inc., operates a seafood processing business on Prince William Sound in Valdez, Alaska. Plaintiff sued Defendants, Exxon/Mobil Corp. and Exxon Shipping Co., under Alaska state law for business losses resulting from the Exxon Valdez oil spill. The district court dismissed Plaintiff's claims as preempted by federal admiralty law. We reversed the dismissal of Plaintiff's state law claims. *Baker v. Hazelwood (In re Exxon Valdez)*, 270 F.3d 1215, 1253 (9th Cir. 2001). On remand, the parties settled all remaining issues except for one: a prejudgment interest rate. The district court determined prejudgment interest rates under federal law. On de novo review, *McCalla v. Royal MacCabees Life Ins. Co.*, 369 F.3d 1128, 1129 (9th Cir. 2004), we reverse. As we explain below, state law supplies the rate of prejudgment interest.

This case arises out of the Exxon Valdez oil spill. On March 24, 1989, Defendants' oil tanker ran into Bligh Reef off Valdez, Alaska, and discharged 11 million gallons of oil

into Prince William Sound. *In re Exxon Valdez*, 270 F.3d at 1223. On March 31, 1989, Plaintiff sued Defendants in Alaska state court for damages to its business from the oil spill, under Alaska Statutes section 46.03.822, which imposes strict liability for releasing a hazardous substance.[1] On April 4, 1990, the parties reached a settlement agreement for losses suffered by Plaintiff in 1989.

On November 21, 1991, the district court removed Plaintiff's remaining state law claims, for years other than 1989, to federal court.[2] On June 3, 1992, the district court denied Plaintiff's motion to remand. We affirmed, holding that the district court had removed the claims properly under 28 U.S.C. § 1441(c). *Eyak Native Vill.*, 25 F.3d at 781.

On January 24, 2004, the district court entered summary judgment against Plaintiff on the basis that, under *Robins Dry Dock & Repair Co. v. Flint*, 275 U.S. 303 (1927), federal admiralty law preempted Plaintiff's claims. We reversed in part and remanded, holding that federal maritime law did not preempt Plaintiff's Alaska state law claims. *In re Exxon Valdez*, 270 F.3d at 1253. On September 27, 2004, the parties settled Plaintiff's remaining state law claims with the exception of one issue: what rate of prejudgment interest to apply to the principle amount of the settlement. The parties agreed to submit this question to the district court.

The district court, relying on *Columbia Brick Works, Inc. v. Royal Insurance Co. of America*, 768 F.2d 1066 (9th Cir. 1985), calculated prejudgment interest rates under federal law. The parties had agreed on two loss dates, one for 1992

---

[1]Plaintiff also joined in an amended and consolidated class action in federal district court. Plaintiff voluntarily dismissed its federal claims on September 24, 1992.

[2]The district court also removed more than 160 other state law cases relating to the oil spill. *Eyak Native Vill. v. Exxon Corp.*, 25 F.3d 773, 774 (9th Cir. 1994).

and one for 1993, and the district court used those dates as the relevant ones from which to calculate interest. Pursuant to the federal law established by *Western Pacific Fisheries, Inc. v. SS President Grant*, 730 F.2d 1280 (9th Cir. 1984), the district court used the Treasury rate prescribed by 28 U.S.C. § 1961(a). Consequently, the district court determined the prejudgment interest rates to be 4.11% and 3.54% for 1992 and 1993, respectively. Plaintiff timely appealed.

**[1]** Under *Erie Railroad Co. v. Tompkins*, 304 U.S. 64 (1938), " 'federal courts sitting in diversity jurisdiction apply state substantive law and federal procedural law.' " *Freund v. Nycomed Amersham*, 347 F.3d 752, 761 (9th Cir. 2003) (quoting *Gasperini v. Ctr. for Humanities, Inc.*, 518 U.S. 415, 427 (1996)). "The *Erie* principles apply equally in the context of pendent jurisdiction." *Mangold v. Cal. Pub. Utils. Comm'n*, 67 F.3d 1470, 1478 (9th Cir. 1995) (citing *United Mine Workers v. Gibbs*, 383 U.S. 715 (1966)). Before today, we have not had the occasion to determine whether *Erie* principles apply when federal courts exercise jurisdiction over state law claims pursuant to 28 U.S.C. § 1441(c). However, the basis of a federal court's jurisdiction over a state law claim is irrelevant for *Erie* purposes. "Where state law supplies the rule of decision, it is the duty of federal courts to ascertain and apply that law." *Witzman v. Gross*, 148 F.3d 988, 990 (8th Cir. 1998) (internal quotation marks omitted). Thus, *Erie* principles apply equally when federal courts exercise jurisdiction under § 1441(c).

**[2]** It is well settled that prejudgment interest is a substantive aspect of a plaintiff's claim, rather than a merely procedural mechanism. *See Mutuelles Unies v. Kroll & Linstrom*, 957 F.2d 707, 714 (9th Cir. 1992) ("In diversity jurisdiction, state law governs all awards of pre-judgment interest."); *see also Emmenegger v. Bull Moose Tube Co.*, 324 F.3d 616, 624 (8th Cir. 2003) (stating that "the question of prejudgment interest is a substantive one"); *Webco Indus., Inc. v. Thermatool Corp.*, 278 F.3d 1120, 1134 (10th Cir. 2002) ("Prejudgment interest in a diversity action is thus a substan-

tive matter governed by state law."); *Perceptron, Inc. v. Sensor Adaptive Machs., Inc.*, 221 F.3d 913, 922 (6th Cir. 2000) ("Prejudgment interest is a substantive element of damage . . . ." ); *Commercial Union Ins. Co. v. Walbrook Ins. Co.*, 41 F.3d 764, 774 (1st Cir. 1994) (stating that "prejudgment interest is substantive law"); *In re Oil Spill by the Amoco Cadiz*, 954 F.2d 1279, 1333 (7th Cir. 1992) (per curiam) ("[F]ederal courts look to state law to determine the availability of (and rules for computing) prejudgment interest."); *Jarvis v. Johnson*, 668 F.2d 740, 746 (3d Cir. 1982) (holding that "federal courts in diversity cases should apply state law with respect to prejudgment interest"); *cf. Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 497 (1941) (determining prejudgment interest of a state claim in federal court without even considering the application of federal law, considering instead whether the law of the place where the contract was made or the law of the forum state applied). "[M]oney has a time value, and prejudgment interest is therefore necessary in the ordinary case to compensate a plaintiff fully for a loss suffered at time t and not compensated until $t + 1$ . . . ." *Hopi Tribe v. Navajo Tribe*, 46 F.3d 908, 922 (9th Cir. 1995) (internal quotation marks omitted). "The purpose of awarding prejudgment interest is to 'compensate [a] plaintiff for the loss of use of the money from the date of injury until the date of judgment.' " *Alderman v. Iditarod Props., Inc.*, 104 P.3d 136, 145 (Alaska 2004) (alteration in original) (quoting *Liimatta v. Vest*, 45 P.3d 310, 321 (Alaska 2002)). Thus, state law applies to Plaintiff's claim for prejudgment interest under state law unless federal law preempts it. *See United States v. 4,432 Mastercases of Cigarettes*, 448 F.3d 1168, 1189 (9th Cir. 2006) ("Federal law may preempt state law under the Supremacy Clause of the Constitution." (citing U.S. Const. art. VI, cl. 2)).

**[3]** Federal admiralty law preempts state law only if the state law " 'contravene[s] any acts of Congress, . . . work[s] any prejudice to the characteristic features of the maritime law, [ ]or interfere[s] with its proper harmony and uniformity

in its international and interstate relations.' " *Askew v. Am. Waterways Operators, Inc.*, 411 U.S. 325, 339 (1973) (quoting *Just v. Chambers*, 312 U.S. 383, 389 (1941)). To determine whether state law interferes with admiralty law, "[t]he Supreme Court has adopted a balancing test that weighs state and federal interests on a case-by-case basis." *In re Exxon Valdez*, 270 F.3d at 1251 (citing *Yamaha Motor Corp., U.S.A. v. Calhoun*, 516 U.S. 199, 210-15 (1996); *see also Ballard Shipping Co. v. Beach Shellfish*, 32 F.3d 623, 628 (1st Cir. 1994)).

**[4]** In *In re Exxon Valdez*, 270 F.3d at 1253, we already held that Plaintiff's state law claims for economic harm are not preempted by federal law. No act of Congress prohibits recovery for purely economic loss; the *Robins Dry Dock*, 275 U.S. 303, rule against economic recovery did not originate in, and is not exclusive to, admiralty law; and, although "Congress does not view either expansion of liability to cover purely economic losses or enactment of comparable state oil pollution regimes as an excessive burden on maritime commerce," Alaska has a "strong interest in regulating oil pollution and in providing remedies for damages caused by oil spills." *In re Exxon Valdez*, 270 F.3d at 1251-52 (internal quotation marks omitted). Consequently, as an aspect of the Alaska claims for economic harm, Plaintiff's claims for prejudgment interest are not preempted by federal law.

Defendants argue, and the district court held, that *Columbia Brick Works*, 768 F.2d 1066, requires us to depart from the usual rule that prejudgment interest is an aspect of the substantive state law claim. We disagree.

**[5]** In *Columbia Brick Works*, the plaintiff sued under an insurance policy for goods shipped between Spain and Oregon. The district court had exercised diversity jurisdiction but awarded the plaintiff prejudgment interest pursuant to federal law. *Id.* at 1067. We affirmed. *Id.* at 1071. But, in so doing, we did not carve out an exception to the usual rule regarding

prejudgment interest. The substantive claim itself, under the marine cargo insurance contract, had to be analyzed under federal admiralty law. *Id.* at 1068-69. Therefore, it followed logically that prejudgment interest in that case was a question of federal law. "In cases tried under admiralty principles *only*, principles of federal law govern a plaintiff's entitlement to prejudgment interest even though the plaintiff may have invoked diversity jurisdiction in his complaint." *Id.* at 1071 (emphasis added). Here, by contrast, Plaintiff's substantive claim arose under Alaska state law only, so Plaintiff's claim for prejudgment interest arises out of, and must be analyzed under, state law as well. For this reason, *Columbia Brick Works* is inapposite.

Defendants also assert that the doctrine of judicial estoppel bars Plaintiff from seeking to apply state law on appeal because, before the district court, Plaintiff argued solely for the application of federal law. *See United States v. Miguel*, 338 F.3d 995, 1002 n.20 (9th Cir. 2003) ("Judicial estoppel prevents a party from taking a contrary position 'where a party assumes a certain position in a legal proceeding, and succeeds in maintaining that position.' " (quoting *New Hampshire v. Maine*, 532 U.S. 742, 749 (2001))). The record contradicts Defendants' premise. Plaintiff did ask that the district court set an interest rate of 29.32%, 18.34%, or 9.20% using its discretion under federal law. But Plaintiff also argued, in the alternative, for an interest rate of 29.32% or 10.5% pursuant to Alaska law. Arguing in the alternative does not invoke judicial estoppel—it is good lawyering.

**[6]** We hold that the district court erred by not applying Alaska law to Plaintiff's Alaska state law claim for prejudgment interest.[3] The parties agree that, under Alaska state law,

---

[3]Consequently, we need not reach Plaintiff's claim that the Extension of Admiralty Jurisdiction (Admiralty Extension) Act, 46 U.S.C. § 30101, unconstitutionally invades state sovereignty and that intervening Supreme Court decisions have impliedly overruled our holding to the contrary in *United States v. Matson Nav. Co.*, 201 F.2d 610 (9th Cir. 1953).

the applicable rate of interest in this case is 10.5%. *See* Alaska Stat. § 09.30.070(a) (1996) ("The rate of interest on judgments and decrees for the payment of money is 10.5 percent a year . . . ."), *amended by* 1997 Alaska Sess. Laws ch 26, §§ 18, 19. They dispute only whether, under Alaska state law, the interest should be compound or simple. Thus, on remand, the district court should limit its inquiry to that determination.

REVERSED and REMANDED with instructions to calculate prejudgment interest under Alaska law using a rate of 10.5%.

---

In addition, because the district court erred in applying federal law to Plaintiff's claim for prejudgment interest, we do not reach the question whether the district court abused its discretion under federal law in determining the applicable rates of interest.