**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

CALIFORNIA PUBLIC UTILITIES
COMMISSION; TRANSMISSION AGENCY
OF NORTHERN CALIFORNIA;
SACRAMENTO MUNICIPAL UTILITY
DISTRICT,

      *Petitioners*,

     v.

FEDERAL ENERGY REGULATORY
COMMISSION,

      *Respondent*,

_____

CALIFORNIA DEPARTMENT OF WATER
RESOURCES STATE WATER PROJECT;
PACIFIC GAS AND ELECTRIC
COMPANY; SAN DIEGO GAS &
ELECTRIC COMPANY; SOUTHERN
CALIFORNIA EDISON COMPANY,

      *Intervenors*.

No. 19-72897

CALIFORNIA PUBLIC UTILITIES
COMMISSION; CALIFORNIA
DEPARTMENT OF WATER RESOURCES;
NORTHERN CALIFORNIA POWER
AGENCY; SACRAMENTO MUNICIPAL
UTILITY DISTRICT; TRANSMISSION
AGENCY OF NORTHERN CALIFORNIA,
*Petitioners*,

v.

FEDERAL ENERGY REGULATORY
COMMISSION,
*Respondent*,

PACIFIC GAS AND ELECTRIC
COMPANY,
*Intervenor*.

No. 20-71335

FERC Nos.
ER14-2529-005
ER15-2294-004
ER16-2320-005

OPINION

On Petition for Review of an Order of the
Federal Energy Regulatory Commission

Argued and Submitted April 16, 2021
San Francisco, California

Filed March 17, 2022

Before: Ryan D. Nelson and Danielle J. Forrest, Circuit Judges, and Janis Graham Jack,[*] District Judge.

Opinion by Judge Forrest

---

## SUMMARY[**]

---

### FERC

The panel denied petitions for review filed by the California Public Utilities Commission and other state agencies ("California"), and concluded that several Federal Energy Regulatory Commission ("FERC") decisions, awarding "incentive adders" – upward adjustments to utilities' rate of return on equity – to three California-based public utilities, were lawful.

On remand from this court's prior decision, *Cal. Pub. Utils. Comm'n v. FERC,* 879 F.3d 966 (9th Cir. 2018) (*CPUC I*), FERC concluded that membership in the California independent system operator (CAISO) was voluntary under California law.

California argued that FERC's orders on remand disregarded and contradicted *CPUC I* because *CPUC I* definitively held that California law prevented the Utilities (intervenors PG&E, Southern California Edison Co., and

---

[*] The Honorable Janis Graham Jack, United States District Judge for the Southern District of Texas, sitting by designation.

[**] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

San Diego Gas & Electric) from leaving CAISO without approval. The panel held that *CPUC I* did not resolve this state law issue. In *CPUC I*, the court addressed whether FERC could ignore the CPUC's assertion that membership in CAISO is not voluntary, but the court did not reach the merits of that issue. The panel concluded that in deciding on remand that California law allowed utilities to voluntarily leave CAISO, FERC did not decide an issue that this court had already decided. Furthermore, the panel held that FERC did not deviate from this court's mandate.

Next, the panel reviewed the merits of FERC's orders on remand for arbitrariness and capriciousness.

First, California argued that it was error for FERC not to apply the *Erie* doctrine and defer to California's interpretation of its own statute. The panel held that *Erie* does not apply here. The incentive adder and the requirement that a utility be a voluntary member of an independent system operator (ISO) to qualify for the incentive adder arose from federal law. The panel held that it was not arbitrary or capricious nor contrary to law for FERC to conclude that the *Erie* doctrine did not strictly apply here and not to employ all the requirements of that doctrine.

Second, California argued that FERC's interpretation of California law as allowing the Utilities to leave CAISO voluntarily was erroneous. Concerning the standard of review used to determine whether FERC properly interpreted state law, the panel held that FERC's interpretation of California law was not entitled to deference. The panel applied de novo review. The California Supreme Court has not decided whether membership in CAISO is voluntary under California law. Although the panel's review

was de novo, in *CPUC I*, the court previously interpreted Order 679 as creating a rebuttable presumption that membership was voluntary. Therefore, California bore the burden of showing that state law made membership involuntary. The panel noted that there was no provision in the California Code that mandates CAISO membership, and no case law that decides or discusses whether utilities who become CAISO members must remain such. A CPUC 1998 Decision stated that future transfers of operational control of transmission facilities would be subject to review under Cal. Public Utility Code § 851, thus making ongoing membership involuntary. The panel held that California courts would not defer to the CPUC's 1998 Decision because it was inconsistent with the relevant California statute, § 851. The panel found no error in FERC's conclusion that membership in CAISO was voluntary under California law despite the suggestion to the contrary in the CPUC's 1998 Decision. As such, FERC's decision was not arbitrary, capricious, or contrary to law under the Administrative Procedure Act.

## COUNSEL

Stephanie E. Hoehn (argued), Arocles Aguilar, and Christine Jun Hammond, San Francisco, California, as and for Petitioner California Public Utilities Commission.

Harvey L. Reiter, Stinson LLP, Washington, D.C., for Petitioner Sacramento Municipal Utility District.

Michael R. Postar, Duncan Weinberg Genzer & Pembroke, Washington, D.C., for Petitioner Transmission Agency of Northern California.

Katharine M. Mapes, Spiegel & McDiarmid, Washington, D.C., for Intervenor/Petitioner California Department of Water Resources and Petitioner Northern California Power Agency.

Anand R. Viswanathan (argued), Attorney; Robert H. Solomon, Solicitor; David L. Morenoff, Acting General Counsel; Federal Energy Regulatory Commission, Washington, D.C.; for Respondent.

Matthew W. Dwyer (argued), Rosemead, California, as and for Intervenor Southern California Edison Company.

Alexandra J. Ward, San Francisco, California, as and for Intervenor Pacific Gas and Electric Company.

Ross R. Fulton, San Diego, California, as and for Intervenor San Diego Gas & Electric Company.

**OPINION**

FORREST, Circuit Judge:

This case returns following our remand to the Federal Energy Regulatory Commission (FERC) in 2018. *See Cal. Pub. Utils. Comm'n v. FERC*, 879 F.3d 966, 980 (9th Cir. 2018) (*CPUC I*). At issue are several FERC[1] decisions awarding "incentive adders"—upward adjustments to utilities' rate of return on equity—to three California-based public utilities. FERC regulations allow for these incentive adders to induce voluntary membership in independent system operators. In *CPUC I*, we concluded that FERC improperly awarded incentive adders to Pacific Gas & Electric Co. (PG&E) without considering the California Public Utilities Commission's (CPUC)[2] assertion that PG&E's membership in the California independent system operator (CAISO) is mandated. On remand, we directed FERC to "inquire into PG&E's specific circumstances, i.e., whether it could unilaterally leave the C[AISO] and thus whether an incentive adder could induce it to remain in the C[AISO]." *Id.* at 979.

On remand, FERC concluded that membership in CAISO is voluntary under California law. The CPUC and several other state entities (collectively, California) petition for review of FERC's orders on remand, arguing that FERC violated this court's mandate and that the orders are arbitrary and capricious. FERC and intervenors PG&E, Southern

---

[1] FERC is a federal agency with general regulatory authority over the interstate market for electricity. 16 U.S.C. § 824(a)–(b).

[2] The CPUC is a California state agency tasked with regulating privately owned utility companies. *See L.A. Metro. Transit Auth. v. CPUC*, 343 P.2d 913, 917 (Cal. 1959).

California Edison Co., and San Diego Gas & Electric Co. (collectively, "Utilities") disagree. We deny the petitions for review, concluding that FERC's decisions were lawful.

## I.  BACKGROUND

### A.  Transmission of Electricity

A brief discussion of the transmission or delivery of electricity sheds some light on the arguments before us. Historically, any consumer who wanted to obtain electrical power had to purchase electricity from a single, local utility company. *See Midwest ISO Transmission Owners v. FERC*, 373 F.3d 1361, 1363 (D.C. Cir. 2004). This was largely due to technological limitations related to power generation. *See New York v. FERC*, 535 U.S. 1, 7–8 (2002). As a result, utility companies held monopolies over their local electricity market. *Id.* However, as technology developed, it became more economically feasible for consumers to buy electricity supplied by other sources. *Id.* Seeking to promote competition between electricity producers, FERC began enacting rules to promote competition in certain segments of the wholesale market. *See Morgan Stanley Cap. Grp. Inc. v. Pub. Util. Dist. No. 1 of Snohomish Cnty.*, 554 U.S. 527, 536 (2008).

Nevertheless, monopolistic tendencies persist within the transmission segment of the industry. *New York*, 535 U.S. at 7–8. These tendencies result at least in part from a simple fact: for electricity to reach a consumer's lightbulb, it must enter and pass through a transmission system, or transmission grid. *See Pub. Util. Dist. No. 1 of Snohomish Cnty. v. FERC*, 272 F.3d 607, 610 (D.C. Cir. 2001) (*per curiam*). Consequently, the transmission-system owner has natural gatekeeping powers and an incentive to favor its own

generation facilities in providing access to the electricity grid (i.e., vertical integration). *Id.*

To combat the economic harm resulting from vertical integration, FERC encourages utility companies to transfer operational control of their transmission facilities to regional non-profit entities known as "transmission organizations," or "regional transmission organizations" (RTOs), that are run by an "independent system operator" (ISOs). *See Midwest ISO*, 373 F.3d at 1364; *CPUC I*, 879 F.3d at 971 n.2; *see also* 18 C.F.R. §§ 35.34, 35.35. Because RTOs and ISOs are independent from market participants, FERC hoped to ensure equal access to transmission facilities for all producers, thereby maximizing competition. *See Midwest ISO*, 373 F.3d at 1364; *Morgan Stanley*, 554 U.S. at 537.

## B. CAISO and Federal Incentives

The federal government has not been alone in trying to combat market inefficiencies caused by vertical integration, which brings us to this case. In 1995, recognizing the economic harm caused by vertical integration, the CPUC "ordered [California's] three largest investor-owned utilities . . . to submit to FERC a proposal to establish an [ISO] and to transfer operational control of their facilities to that ISO." *CPUC I*, 879 F.3d at 971; *see* Cal. Pub. Util. Code §§ 330, 365. The three utilities did so, and, in concert with FERC and the CPUC, they transferred operational control of their transmission facilities to the newly created CAISO. *Id.* In approving the transfer, the CPUC asserted that any future transfer of operational control back to the utilities from CAISO would require the CPUC's approval ("1998 Decision").

Less than a decade later, FERC adopted Order 679. *CPUC I*, 879 F.3d at 970; *Promoting Transmission*

*Investment Through Pricing Reform*, Order No. 679, 116 FERC ¶ 61,057, *on reh'g*, Order No. 679-A, 117 FERC ¶ 61,345 (2006), *on reh'g*, Order No. 679-B, 119 FERC ¶ 61,062 (2007) [hereinafter Order 679, Order 679-A, or Order 679-B]; 16 U.S.C. § 824s(c). As previously explained in *CPUC I*, this order established incentives for utility companies to become and remain members of RTOs by way of "incentive adders":

> Order 679 established upward adjustments, or "incentive adders," to the rate of return on equity of utilities that participate in transmission organizations. Order 679 set forth the terms on which FERC would grant the incentive adders. FERC determined that it would "not grant outright any incentives," but that it would grant such incentives "when justified" in the context of individual declaratory orders or section 205 filings. FERC would evaluate adder requests on a "case-by-case basis."

> Order 679 provided that adders would be available for utilities that "have already joined, and that remain members of," transmission organizations in "recognition of the benefits that flow from membership" and the fact that "continuing membership is generally voluntary." The order stated that a utility "will be presumed to be eligible for the incentive" if it can demonstrate that it has joined a transmission organization and that its membership is ongoing.

879 F.3d at 970–71 (internal citations and footnote omitted).

After FERC enacted Order 679, PG&E regularly requested the incentive adders due to its ongoing membership in CAISO, and FERC summarily granted these requests to incentivize ongoing membership. *Id.* at 971–72; Order 679-A, ¶ 86 n.142. But when PG&E requested the adders in 2016 and 2017, the CPUC objected. *CPUC I*, 879 F.3d at 972. The CPUC argued that PG&E should not receive the requested incentive adder because California law mandated PG&E's ongoing membership in CAISO, and thus the adder could not induce PG&E to remain a member. *Id.* FERC disagreed and summarily granted the adders over the CPUC's objection. California petitioned this court for review. *Id.* at 972–73.

## C. CPUC I

In 2018, we concluded that FERC's summary decision awarding an incentive adder to PG&E was arbitrary and capricious. *Id.* at 973. We held that Order 679 "permits challenges [like the CPUC's] on the grounds that they will not induce continuing participation in transmission organizations," and that Order 679 obligates FERC to conduct a case-by-case review before awarding an incentive adder. *Id.* at 977–79. Thus, our decision in *CPUC I* required FERC to "inquire into PG&E's specific circumstances, i.e., whether it could unilaterally leave the C[AISO] and thus whether an incentive adder could induce it to remain in the C[AISO]." *Id.* at 979. Responding to PG&E's argument that its continuing participation in the ISO was voluntary, we noted that, "even if correct," that argument could not sustain the orders on review because it did not "appear anywhere in those orders." *Id.* at 978 n.5. We "remand[ed] to FERC for further proceedings consistent with [our] opinion," noting that we "need not, and [did] not, reach any other issue." *Id.* at 980.

## D.  Remand Proceedings

On remand, FERC ordered the parties to brief the following questions:

> (a) Does California law require PG&E to participate in CAISO?
>
> (b) Is [FERC] required to defer to CPUC's interpretation of the relevant California law(s) in this case that CPUC is charged with administering when that interpretation is presented in a pleading before [FERC]?
>
> (c) If [FERC] is required to defer to CPUC's interpretation of the relevant California law(s) as presented in its pleadings before [FERC] in this case, what is the standard for such deference that [FERC] must apply?
>
> (d) If PG&E were to seek CPUC approval to withdraw from CAISO and thus assume operational control of its transmission facilities or join another . . . ISO, what standard would CPUC apply under the California Public Utility Code in considering this matter?

Before responding to FERC's questions, California argued that FERC had "misconstrued the scope of remand" ordered in *CPUC I*. In California's view, "the only outcome on remand consistent with the Opinion and with Order 679 . . . would be to deny PG&E the membership incentive." California answered FERC's questions as follows:

> [T]he short answer to [FERC]'s questions is that, under the long-settled principles established in *Erie R.R. v. Tompkins*, 304 U.S. 64 (1938) and its progeny, FERC is bound by the CPUC's interpretation of California law. In particular, the CPUC's unchallenged determination, made more than twenty years ago, that PG&E, Southern California Edison Company and San Diego Gas & Electric Company must obtain CPUC permission before they may leave the CAISO is the controlling law of the case here.

California declined to define the level of deference FERC owed to the CPUC's interpretation of state law, stating only that the CPUC's interpretation was "binding." California further declined to clearly explain how it would evaluate PG&E's request to leave the CAISO, explaining only that it would consider "controlling law," "the public interest standard," and "specific circumstances."

Not surprisingly, the Utilities have a different view. They contend (1) that California law does not require them to participate in CAISO; (2) that FERC should not defer to the CPUC's interpretation of the relevant statute any more than a California court would; and (3) no approval is required for them to leave CAISO, and even if it were, the standard that the CPUC would apply in granting approval is unclear.

In its Order on Remand, FERC agreed with the Utilities and reaffirmed the incentive adder. FERC determined that the *Erie* doctrine did not apply because the incentive adder is created by federal law. Still, in considering "PG&E's specific circumstances," FERC considered whether California law mandated PG&E's participation in CAISO or

prevented it from leaving. FERC concluded that no California statute compelled the Utilities' membership and that the CPUC's 1998 Decision, stating that withdrawal from the ISO is subject to the CPUC's approval, was not supported by California law. FERC relied on the plain language of the relevant California statutes, canons of construction used by the California Supreme Court, and a D.C. Circuit case interpreting an analogous federal statute. Based on its reasoning in the Order on Remand, FERC issued two Remand Rehearing Orders.[3]

California sought reconsideration, which FERC denied after reiterating and elaborating on its conclusion that California law does not mandate the Utilities' participation in CAISO or prevent them from withdrawing. Addressing *Erie*, FERC explained that, while it interpreted California law the same as the California Supreme Court would, *Erie* did not govern the issue of whether awarding an incentive adder, created by federal law, was appropriate:

> In this proceeding, we are acting under
> federal law as authorized by section 219 of

---

[3] The orders on review resolve five separate cases. The Order on Remand resolves the three PG&E cases at issue in *CPUC I*. The two Orders on Rehearing resolve the other two rate cases relying, as stated, on the Order on Remand. Thus, despite there being five rate cases at issue and two consolidated petitions for review, the parties focus exclusively on the Order on Remand and FERC's later Remand Rehearing Orders (which explain FERC's reasoning in the Order on Remand). The parties address this nuance only insofar as California argues that the logic of the Remand Rehearing Orders cannot support the rehearing orders involving the two rate cases not at issue in *CPUC I* because the Remand Rehearing Orders postdate those decisions. In our view, the Remand Rehearing Orders merely elaborate on the same reasoning FERC provided in its Order on Remand, so this opinion resolves all five rate cases and both petitions for review.

the F[ederal] P[ower] A[ct] to determine whether PG&E is entitled to the federal transmission rate incentive. The fact that state law could inform our determination does not make *Erie* applicable or, as argued by California Parties, require [FERC] to defer to CPUC's interpretation of state law.

California now seeks review of FERC's orders entered after remand. It argues that FERC ignored our mandate in *CPUC I* and that the remand orders are arbitrary and capricious because FERC failed to properly apply California law. Essentially, California argues that FERC's authority on remand was limited to deferring to the CPUC's interpretation of California law and denying the incentive adder. FERC and the Utilities contend that FERC's remand orders are permissible under *CPUC I* and are otherwise lawful.

## II. DISCUSSION

### A. Scope of *CPUC I*'s Mandate

We review whether an agency followed our mandate de novo. *See Olivas-Motta v. Whitaker*, 910 F.3d 1271, 1275, 1280 (9th Cir. 2018). Under the law-of-the-case doctrine, courts are generally prohibited "from considering an issue that has already been decided by that same court or a higher court in the same case." *Stacy v. Colvin*, 825 F.3d 563, 567 (9th Cir. 2016). The mandate rule is closely related "but broader." *Id.* "[A]n administrative agency may not deviate from a supervising court's remand order, and the reviewing court may review the agency's decision on remand 'to assure that its prior mandate is effectuated.'" *Olivas-Motta*, 910 F.3d at 1280 (quoting *Sullivan v. Hudson*, 490 U.S. 877, 886 (1989)). But this mandate rule is limited to those issues that

were before the court and "disposed of by its decree." *Id.* (citation omitted). Thus, an agency may consider on remand "any issue not expressly or impliedly disposed of" by the court. *Id.* (quoting *Stacy*, 825 F.3d at 568).

California argues that FERC's orders on remand disregard and contradict *CPUC I*. The thrust of this argument is that *CPUC I* definitively held that California law prevents the Utilities from leaving CAISO without approval. California greatly overstates the scope of our opinion in *CPUC I*. We did not resolve this state-law issue. It is true that there is one introductory statement that supports California's reading:

> In this petition for review, we consider whether the Federal Energy Regulatory Commission arbitrarily and capriciously determined that Pacific Gas & Electric Company was eligible for an incentive adder for remaining a member of the California Independent System Operator Corporation when *state law prevented PG&E's departure without authorization*.

*CPUC I*, 879 F.3d at 970 (emphasis added and abbreviations omitted). But the rest of our opinion is silent on the state-law issue; we never analyzed whether PG&E could leave without the CPUC's authorization. *See id.* Indeed, we expressly noted that the Utilities were arguing that participation in CAISO "[was,] in fact, voluntary" but did not address the issue because "[t]hese arguments, even if correct, could not sustain the orders on review, as they do not appear anywhere in those orders." *Id.* at 978 n.5. Further still, our *CPUC I* opinion concludes by noting that we did not "reach any other issue urged by the parties." *Id.* at 980.

Moreover, in *CPUC I*, we addressed only FERC's refusal to consider California's arguments that CAISO membership is involuntary. *See id.* at 979 ("FERC ignored this argument"). That is, we addressed whether FERC could ignore the CPUC's assertion that membership in CAISO is not voluntary, but we did not reach the merits of that issue. Because we were addressing only a procedural issue, it did not matter to our decision in *CPUC I* whether in fact "state law prevented PG&E's departure [from CAISO] without authorization." *Id.* at 970. Accordingly, we conclude that in deciding on remand that California law allows utilities to voluntarily leave CAISO, FERC did not decide an issue that we have already decided.

Furthermore, we do not find that FERC deviated from our mandate. Despite California's assertion otherwise, we did not direct FERC to adopt the CPUC's interpretation of California law and deny the incentive adder. We simply remanded the case back to FERC for further proceedings and instructed that "[t]o satisfy Order 679's case-by-case analysis requirement and to avoid creating a generic adder, FERC needed to inquire into PG&E's specific circumstances, i.e., whether it could unilaterally leave the C[AISO] and thus whether an incentive adder could induce it to remain in the C[AISO]." *Id.* at 979–80. This is precisely what FERC did, and thus we find no procedural error.

## B.  FERC's Remand Orders

We review the merits of FERC's orders on remand for arbitrariness and capriciousness. *CPUC I*, 879 F.3d at 973. We must uphold FERC's decision if it "examined the relevant considerations and articulated a satisfactory explanation for its action, including a rational connection between the facts found and the choice made." *Id.* (quoting *FERC v. Elec. Power Supply Ass'n*, 577 U.S. 260, 292

(2016)). We do not "ask whether [the] regulatory decision is the best one possible or even whether it is better than the alternatives." *Id.* (quoting *Elec. Power Supply Ass'n*, 577 U.S. at 292). "Our review is limited to the administrative record . . . and those grounds upon which the record discloses that [FERC's] action was based." *Id.* (cleaned up).

As previously discussed, in *CPUC I*, we rejected FERC's assertion that Order 679 allowed it to grant incentive adders to electric utilities without analyzing whether their continued membership in CAISO was voluntary as "merely a convenient litigating position and a *post hoc* rationalization of the orders on review." *Id.* at 976. "[E]mploy[ing] traditional tools of interpretation," *id.*, we held that Order 679 reflects "FERC's policy of only providing incentives to induce future voluntary conduct," *id.* at 978. Thus, it was arbitrary and capricious for FERC to depart from its own policy and award incentive adders without determining whether they were actually incentivizing continued CAISO membership. *Id.* at 977–78.

In this appeal, the parties dispute whether FERC conducted the "case-specific inquiry into the circumstances of PG&E's membership" that we directed. *Id.* Specifically, California argues that (1) it was error for FERC not to apply the *Erie* doctrine and defer to California's interpretation of its own statute, and (2) FERC's interpretation of California law as allowing the Utilities to leave CAISO voluntarily was erroneous. We address each argument in turn.

### 1. The *Erie* Doctrine

The *Erie* doctrine dictates whether state or federal law applies. "The source of the right sued upon, not the ground on which federal jurisdiction is invoked," is determinative. *Int'l Ord. of Job's Daughters v. Lindeburg & Co.*, 633 F.2d

912, 915 (9th Cir. 1980) (citing *Maternally Yours v. Your Maternity Shop*, 234 F.2d 538, 540 n.1 (2d Cir. 1956)). Thus, "[w]here state law supplies the rule of decision," *Erie* requires "federal courts to ascertain and apply that law." *In re Exxon Valdez*, 484 F.3d 1098, 1100 (9th Cir. 2007) (citation omitted). The *Erie* doctrine "is inapplicable to claims or issues created and governed by federal law." *Maternally Yours*, 234 F.2d at 540 n.1.

*Erie* does not apply here. The incentive-adder and the requirement that a utility be a *voluntary* member of an ISO to qualify for the incentive adder arise from federal law. *See* Order 679 at ¶ 331. Indeed, California challenges the incentive adder as contrary to *FERC's* "voluntariness" requirement. That California law dictates whether membership in CAISO is voluntary does not change the "source of the right sued upon" is federal law. But even though *Erie* does not strictly apply, its test for ascertaining state law—analyzing how the state supreme court would decide the issue absent a definitive prior ruling—is nonetheless a helpful framework where FERC must determine a question of state law. Thus, we hold that it was not arbitrary or capricious nor contrary to law for FERC to conclude that the *Erie* doctrine does not strictly apply here and not to employ all the requirements of that doctrine.

## 2. FERC's voluntariness requirement

Turning to FERC's conclusion that California law allows electric utilities to voluntarily withdraw from CAISO, we are again faced with a two-part question: (1) what standard of review applies to FERC's interpretation of California law; and (2) did FERC's interpretation of California law render its orders arbitrary and capricious?

### a.  Standard of review

As previously stated, we review FERC's overall decision to determine whether it was "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." *CPUC I*, 879 F.3d at 973 (quoting 5 U.S.C. § 706). The question here is what standard of review we apply when determining whether FERC properly interpreted state law. FERC is entitled to deference in interpreting federal laws within its expertise. *See Chevron U.S.A., Inc. v. Nat. Res. Def. Council, Inc.*, 467 U.S. 837, 842–43 (1984); *Ctr. for Biological Diversity v. Zinke*, 900 F.3d 1053, 1067 (9th Cir. 2018) ("Agency decisions deserve the highest deference when the agency is making predictions, within its area of special expertise." (cleaned up)). But FERC does not have expertise in interpreting California state law. As such, FERC's interpretation of California law is not entitled to deference.

This conclusion is consistent with decisions from other circuits. For example, in *Cellwave Telephone Services LP v. FCC*, the D.C. Circuit acknowledged the arbitrary and capricious standard in reviewing an FCC decision determining a corporate entity's status under state law. But the D.C. Circuit reviewed de novo the FCC's interpretation of state law without giving the FCC deference. 30 F.3d 1533, 1535–38 (D.C. Cir. 1994).

Likewise, in *Levy v. Office of Personnel Management*, the Federal Circuit considered whether the Merit Systems Protection Board properly concluded that a former spouse was entitled to federal retirement benefits under a California divorce judgment. 902 F.2d 1550, 1552 (Fed. Cir. 1990). While it reviewed the Board's ultimate decision under the arbitrary and capricious standard, the Federal Circuit reviewed the Board's interpretation of California law de

novo without giving any deference. *See id.* at 1552–55. The Federal Circuit rejected the agency's argument that its interpretation of state law was "reasonable," noting that "[n]o amount of deference can sustain a federal agency's interpretation *of state law* when, as here, the agency's interpretation is in direct conflict with decisions of the state's highest court." *Id.* at 1554 n.8. After concluding that the Board's interpretation was "contrary to controlling California law," the Federal Circuit set aside the Board's decision as contrary to law. *See id.* at 1554 & n.8.

And in *Walker Operating Corp. v. FERC*, 874 F.2d 1320, 1332 (10th Cir. 1989), the Tenth Circuit indicated that neither the court nor FERC need defer to a state agency's interpretation of state law as it implicates a federal issue. But the Tenth Circuit upheld FERC's interpretation of Texas law noting that FERC's interpretation was "well represented in Texas law," Texas statutes and regulations were "consistent and harmonious with FERC's position," and thus there was "overwhelming support for the reasonableness of FERC's definitional position." *Id.* at 1333–34. FERC's interpretation of state law in *Walker* was therefore consistent with APA review.

Even though existing caselaw is not definitive, general principles of administrative law and the decisions just discussed counsel us to conclude that deference to FERC's interpretation of California law is unwarranted. "Deference is appropriate when the agency has expertise in a particular area or the Congress has entrusted the agency to administer a particular statute." *Cellwave*, 30 F.3d at 1537 (citing *Chevron*, 467 U.S. at 842). Giving deference in these situations captures the "benefit of specialized experience" that an agency possesses, which may be valuable when facing "highly detailed" regulatory schemes. *United States*

*v. Mead Corp.*, 533 U.S. 218, 235 (2001). The Supreme Court also has given deference to an agency's interpretation of its own regulations in recognition of the agency's role as regulatory drafter. *See Auer v. Robbins*, 519 U.S. 452, 461 (1997).

The validity, scope, and meaning of these deference principles is subject to much debate. *See, e.g., Kisor v. Wilkie*, 139 S. Ct. 2400, 2426 (2019) (Gorsuch, J., concurring) (criticizing *Auer* deference as it "requires judges to accept an executive agency's interpretation of its own regulations even when that interpretation doesn't represent the best and fairest reading."); *Pereira v. Sessions*, 138 S. Ct. 2105, 2121 (2018) (Kennedy, J., concurring) ("[I]t seems necessary and appropriate to reconsider, in an appropriate case, the premises that underlie *Chevron* and how courts have implemented that decision."); *Michigan v. EPA*, 576 U.S. 743, 760 (2015) (Thomas, J., concurring) (questioning the "constitutionality of our broader practice of deferring to agency interpretations of federal statutes."); *Perez v. Mortg. Bankers Ass'n*, 575 U.S. 92, 133 (2015) (Thomas, J., concurring) ("[T]he entire line of precedent [behind *Auer* deference] raises serious constitutional questions and should be reconsidered in an appropriate case."). But applying these principles, as we must, none of the justifications that support giving deference to federal agencies apply here where FERC is interpreting California law, not its own regulations.

While FERC has expertise in electricity regulation, it does not have specific expertise in California public policy or interpreting California law, nor has Congress assigned it the task of interpreting state statutes. FERC's energy-regulation expertise is unnecessary to answering whether California law allows PG&E to voluntarily leave CAISO, as evidenced by FERC's decision. FERC did not reference its

agency-specific knowledge or experience in answering this question; it applied commonly used statutory interpretation tools to determine how the California Supreme Court would construe the California statute, such as the *noscitur a sociis*[4] interpretive cannon and the reasoning in a D.C. Circuit case interpreting an analogous federal statute. Federal courts are at least as able as FERC to use these same interpretive tools to determine state law as that is a task squarely in the federal judiciary's wheelhouse. *See West v. Am. Tel. & Tel. Co.*, 311 U.S. 223, 237 (1940) ("State law is to be applied in the federal as well as the state courts and it is the duty of the former in every case to ascertain from all the available data what the state law is and apply it . . . ."); *see Judd v. Weinstein*, 967 F.3d 952, 955 (9th Cir. 2020) (district court's application of state law is reviewed de novo).

For these reasons, we find no justification for deferring to FERC's interpretation of California law, and we apply de novo review.

### b. California law

FERC concluded that membership in CAISO is voluntary under California law. The California Supreme Court has not decided this question. Therefore, we determine California law by predicting how the California Supreme Court "would decide the issue using intermediate appellate court decisions, decisions from other jurisdictions, statutes, treatises, and restatements as guidance." *Vestar Dev. II, LLC v. Gen. Dynamics Corp.*, 249 F.3d 958, 960 (9th Cir. 2001) (citation omitted). Even though our review is de novo, we previously interpreted Order 679 as creating a rebuttable presumption that membership is voluntary. *CPUC I*, 879

---

[4] It is known by its associates.

F.3d at 977 (citing Order 679 at ¶ 327). Therefore, California bears the burden of showing that state law makes membership involuntary. *Id*.

As FERC noted, California "point[s] to no provision in the California Code that mandates [CAISO] membership." The statutory provisions that California relies on merely directed the CPUC to facilitate the creation of CAISO and encourage utilities to join. *See* Cal. Pub. Util. Code § 330(m) ("[E]lectric utilities *should* commit control of their transmission facilities to the [ISO]") (emphasis added); *id.* § 365(a) ("[CPUC] shall . . . *encourage* all publicly owned utilities in California to become full participants [in the ISO]") (emphasis added). There is also no California case law—at any level—that decides or discusses whether utilities who become CAISO members must remain such. Instead, the parties focus their arguments on how much deference a California court would give the CPUC's 1998 Decision.

The 1998 Decision stated that future transfers of operational control of the transmission facilities will be subject to review under California Public Utility Code § 851, thus making ongoing membership involuntary.[5] California

---

[5] California also references a 1995 decision. We focus on the 1998 Decision because it specifically discussed future transfers of operational control *from* CAISO, whereas the 1995 decision was concerned with transfers *to* CAISO in the first instance. *Compare Order Instituting Rulemaking on Commission's Proposed Policies Governing Restructuring California's Electric Service Industry and Reforming Regulation*, Decision 95-12-063, 1995 WL 792086, at *15 (Dec. 20, 1995) ("Under state law we must approve transfer of control over the investor-owned utilities' transmission systems and dispatch facilities *to* the [CAISO].") (emphasis added), *with Joint App. of Pac. Gas & Elec. Co.*, Decision 98-01-053, 1998 WL 242747, at *7 (Jan. 21, 1998)

argues this statement is binding on California state courts, but California law does not bear out this assertion. While the CPUC purported to interpret California's statute, that interpretation was not the focus of the CPUC's decision. *See Joint App. of Pac. Gas & Elec. Co.*, Decision 98-01-053, 1998 WL 242747 (Jan. 21, 1998). Furthermore, the statute at issue defines the scope of the CPUC's authority, a subject on which agencies are not afforded deference. *See New Cingular Wireless PCS, LLC v. Pub. Utils. Comm'n*, 201 Cal. Rptr. 3d 652, 671 (2016) ("Where the statute subject to interpretation is one that defines the very scope of the CPUC's jurisdiction, [a highly deferential standard] is not appropriate."); *see also Yamaha Corp. of Am. v. State Bd. of Equalization*, 960 P.2d 1031, 1036 (Cal. 1998) (explaining an agency's interpretation of a statute "does not implicate the exercise of a delegated lawmaking power; instead, it represents the agency's view of the statute's legal meaning and effect, questions lying within the constitutional domain of the courts"). Moreover, whether the CPUC must approve a utility's withdrawal from CAISO was not actually litigated when the CPUC issued its 1998 Decision, and thus it is unclear what, if any, preclusive effect the 1998 Decision could have on the question before us. *See Samara v. Matar*, 419 P.3d 924, 926 (Cal. 2018).

But most significant, we conclude that California courts would not defer to the CPUC's 1998 Decision because it is inconsistent with the relevant California statute. *See Yamaha*, 960 P.2d at 1036. Section 851 of the California Public Utility Code provides: "A public utility . . . shall not sell, lease, assign, mortgage, or otherwise dispose of . . . any part of its [property] . . . without [CPUC approval]." Cal.

("[A]ny future transfer of operational control . . . *from* the [CAISO] will, itself, be subject to review under [Public Utilities] Code Section 851.").

Pub. Util. Code § 851. Section 851 does not reference transfers of operational control; thus, the question is whether "otherwise dispose of" encompasses these transfers. The reasoning in *Atlantic City Electric Co. v. FERC*, which FERC referenced in its decision on remand, is instructive on this point. 295 F.3d 1 (D.C. Cir. 2002). There, the D.C. Circuit applied the *noscitur a sociis* canon of statutory interpretation (which instructs that words grouped in a list should be given a similar meaning) to a similar federal statute and concluded that the phrase "otherwise dispose of" "contemplate[ed] a transfer of ownership or proprietary interests" because it was listed with terms such as "sell" and "lease." *Id.* at 12. Because a change in operational control involves only a transfer of certain operational responsibilities, the court held that "[a] utility does not 'sell, lease, or otherwise dispose' of its facilities when it agrees to the changes in operational control necessary to initially join or to withdraw from an ISO." *Id.* at 11.

We agree. California courts apply the *noscitur a sociis* canon of interpretation. *See, e.g.*, *Sierra Club v. Superior Ct.*, 302 P.3d 1026, 1034 (Cal. 2013). And like the federal statute interpreted in *Atlantic City Electric Co.*, California's statute also focuses on ownership and proprietary interests by using words such as "sell" and "lease." While a transfer of operational control may result from a transfer of ownership, the former does not require the latter—a fact contemplated by the federal regulations themselves. *See* 18 C.F.R. § 35.34 ("The [transfer of operation control] requirement . . . may be satisfied by proposing to transfer to the Regional Transmission Organization ownership of the facilities in addition to operational control."). Therefore, we have no reason to believe that a California court would conclude that transfers of operational control fall within Section 851's "otherwise dispose of" language because such transfers are

unlike any of the other actions listed in Section 851. For these reasons, we find no error in FERC's conclusion that membership in CAISO is voluntary under California law despite the suggestion to the contrary in the CPUC's 1998 Decision. As such, FERC's decision was not arbitrary, capricious, or contrary to law under the APA. *See* 5 U.S.C. § 706.

## III. CONCLUSION

We conclude that the CPUC's 1998 Decision is not binding on California courts and, therefore, it is not binding on FERC. And where neither the text of California's Public Utility Code nor any California caselaw mandates that utilities maintain ongoing membership in CAISO or get the CPUC's approval before leaving CAISO, we hold that FERC did not err in concluding that the Utilities' membership in CAISO is voluntary. Therefore, FERC's voluntariness requirement for awarding incentive adders was satisfied and its award of such adders to induce the Utilities to remain in CAISO was not arbitrary or capricious.

California's petitions for review are **DENIED**.